Pearson, J.
 

 Three questions are presented by the bill and answer upon the construction of the will of Lemuel H. Simmons.
 

 Obscurity is as often caused by the use of too many words, as by not using words enough. This will is an instance of the bad effect of using too many.
 

 The first question is, whether the fifteen hundred dollars worth of slaves, given to Emily Simmons, in lieu of land, are to be taken out of the slaves, belonging to the testator, at his death, or'are to be purchased by the executors ; whereby the purishable estate, (as it is termed,) which, after the payment of debts, is to be equally divided between the wife and all the children, except Elizabeth, who was dead, will be diminished to that amount.
 

 From the whole will, the testator seems to have treated his estate, as divided into three funds; land, slaves, and perishable estate. The latter he directs to be divided equally between his wife and children, after the payment of his debts. This is the only charge, which he has expressly put upon the “perishable estate,” and in the absence of any direction, that it should also be burthened with the “fifteen hundered dollars -worth of slaves,” we can see no reason for doing so.
 

 The slave fund is to be divided between the three children, who were living, and the children and husband of a deceased child. To the share of Emily is to be added fifteen hundred dollars worth of slaves, in lieu of land.
 
 *388
 
 There is no intimation that this share is to be made up out of the perishable estate fund, for the sake of increasing the slave fund. In giving a share of the slave fund to his son-in law Ward and his children, he directs the fund to be increased by the value of shares before put into his possession, and as many more slaves to be added to what Ward already had, as will make his share equal to the shares of the other children, except the share of Emily. The slaves, to be added in this instance, certainly come from the slave fund, and from the fund of the “perishable estate,” and yet, there is no better reason to be assigned for taking this addition from the slave fund, than for taking Emily’s addition of $1500 worth from that fund. The words “except Emily Simmons,” in the connection in which they are used, are significant to show, that her share was to be taken entirely from the ‘slave fund.’
 

 2nd. Mary Ann. Simmons married the defendant Oldfield, after the will was made, and died in the life time oflhe testator, without children. The second question is, whether Oldfield is entitled to a life estate in the legacy that was intended for her. We think, that he is not. The' legacy, intended for her, lapsed by her death. Oldfield takes nothing, because both the subject'and the description of the person fail. There is no distinct substantive legacy given to the husband of Mary Ann. The legacy, given to her should she marry, is to be held by her and her husband, during their joint lives and the life of the survivor. She got no legacy, and, therefore, the subject of the legacy, intended for the husband, failed. When the principal falls, the incident falls with it. The description of persons also fails. Oldfield
 
 was
 
 the husbapd of Mary Ann, but at the death of the testator, when the will; takes effect, he
 
 was not
 
 her husband, and did not answer the description ; nor did he answer the description, when the will was made. It may be added, the
 
 reason
 
 for giving him any thing had ceased.
 

 
 *389
 
 3rd. Mary Ann having died in the life time of the testator, without children, the third question is, do the “heirs” and “next of kin” of the testator take by purchase, as “devisees” and “legatees'?” Or do the slaves and land, intended for Mary Ann, fall back into the estate, as undisposed of property and go to the persons, who would be entitled, as in case of intestacy ? In the latter case, the widow would be entitled to a distributive share of the slaves, under the statute of distributions. In the former case, the widow takes nothing, and it would be a question, whether the children of Elizabeth Ward take any part.
 

 We think, the “heirs” and “next of kin” of the testator take by purchase, as “devisees” and legatees.” It is settled law, that where a particular estate is given by will, with a remainder over, whether vested or contingent, the -remainder takes effect, notwithstanding the particular estate fails by the death of the person, for whom it was intended, before the death of the testator. The law is the same, in respect to executory devises and bequests, unless there be an intention expressed, that the limitations over should depend upon the vesting of the preceding estates, as a condition precedent; which is not usually the case, for most generally the limitations over are intended to take effect, whenever the preceding estates are out of the way, without reference to the
 
 manner
 
 in which they get out of the way. 2
 
 William’s Ex’rs,
 
 764, and the cases there cited.
 

 In this case there is an estate for life to .Mary Ann, subject to be enlarged, so as to let in a life estate for her hushand, remainder to her children, if she has any ; if not, remainder, as to the land, to the heirs of the' testator, and as to the slaves, to the next of kin of the testator; These limitatations over, clearly, do not depend upon the vesting of the preceding estate in the tenant for life, asa condition precedent; a'nd, therefore, cannot be affected by the fact, that the life estate lapsed.
 

 
 *390
 
 As to the land, the word “heirs” is a term of the law, having a known and fixed meaning, and there is no difficulty in saying, that the children of Mrs. Ward are entitled to represent her, and take the share of the land’, to which she would have been entittled, if alive.
 

 As to the slaves, there is 'some more difficulty; for, although the words “next of kin,” like the word “heirs,” has a fixed meaning, yet it does not seem to be as well known. Next of kin means nearest of kin. This meaning is fixed, by the cases, unless there be something to introduce the idea of representation, by which one, who is not next, or as near, or equal in degree, may bring himself up to the same degree, by taking the place of one, who, if living, would be as near.
 
 Jones
 
 v.
 
 Olive, 3
 
 Ired. Eq. 369. We have looked at this case with an inclination to take in the children of Mrs. Ward, but are unable to find any ground, upon which to stand, in their favor.
 

 If to the words “next of kin,” these words had been added, “as in case of intestacy,” or “as by the statute of distributions,” or if the language of that statute had been adopted, “to the next of kin in equal degree, or to those who legally represent them,” we might have included the grand-children ; but upon the words “next of kin,” simply, they cannot be included. Children are in the first degree ; grand-children are in the second degree. We have no right to bring grand children as near as children, unless the testator had made known to- us by his will, that such was his intention.
 

 If the land and slaves had been disposed of together, so as to show an intent, that they should go to the same persons, then, as the wrnrd “heirs” embraces the idea of representation, perhaps, the grand children might have been allowed to take by representation, in reference to both funds. But in this will, special care is taken to separate the two funds, and to give the land to the heirs
 
 *391
 
 and the slaves to the next of kin : Indicating thereby, if there be any meaning in the separation, an intention that the funds should go to different persons ; and as the word “heirs” takes in the grand-children as to the land fund, the words “next of kin” cannot take them in as to the slave fund also, without giving the land fund and the slave fund to the same persons ; thereby making it idle for the testator to have been at such pains to keep the two funds separate, and give one to the heirs, and the other to the next of kin.
 

 There must be a decree, declaring : 1st. That the fifteen hundred dollars worth of slaves, given to Emily Simmons, are to be taken out of the slaves, belonging to the testator at his death, before a division is made : 2nd. That Richard Oldfield is not entitled to a life estate in the legacy, intended for Mary Ann Simmons. 3rd. That the children of Elizabeth Ward are not entitled to any part of the slaves, that would have fallen to her, had she lived. The costs must be paid out of the estate in the hands of the executors..
 

 !Pjer. Curiam.
 

 Declared accordingly.